C. E. BUSWELL & others *vs.* SUPREME SITTING OF THE ORDER OF THE IRON HALL & others.

Worcester.     March 15, 16, 1894. — April 16, 1894.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Beneficiary Association — Reserve Fund — Receiver appointed in another State.*

A receiver appointed by a court of equity in a foreign jurisdiction, to whom an insolvent corporation organized under the laws of that jurisdiction, its officers and agents, are ordered to assign and deliver all its property and effects, and have assigned and delivered them accordingly, is in effect an assignee of such corporation; and, if he acts under a court of competent jurisdiction of the State by which the corporation was created, and in which its principal offices are situated and its principal business is carried on, he has a standing to intervene in and be heard on a proceeding in this Commonwealth for the appointment of a receiver of the property of the corporation found here.

If a person, by attachment or otherwise, has obtained a valid lien on the property · in this Commonwealth of a foreign corporation, such lien is not dissolved by the filing of a bill or the appointment of a receiver, but must be enforced; but where there is no such lien, the general principle is that the property should be so administered that all claimants should receive their equal ratable shares of the whole property of the corporation.

A fraternal beneficiary association incorporated and having its Supreme Sitting in another State, with local branches in this Commonwealth holding a charter and working under the jurisdiction of the Supreme Sitting, established a benefit fund wherein members, under specified conditions and regulations, might become participants, and from which they might receive indemnity when by

reason of disease or accident they became totally disabled from following any vocation. The fund was derived from assessments upon the holders of benefit certificates made by the Supreme Sitting of the Order, from time to time, through the local branches. Eighty per cent of the amount received by each branch on each assessment was sent to the supreme cashier of the Supreme Sitting, while the remaining twenty per cent was set aside and retained by the local branch as a reserve fund, but was the property of the Supreme Sitting, and at all times subject to its control. *Held,* that the legal title to the reserve fund, which was essentially a part of the benefit fund, was in the Supreme Sitting and not in the different local branches, and was held in trust for all the holders of benefit certificates ; and that upon the insolvency of the association, and the appointment of a receiver thereof by a court of competent jurisdiction of the State where the association was organized who was authorized to collect all the moneys belonging to the order in the possession of all the branches wherever organized for the purpose of equally and ratably distributing them among the creditors and certificate holders wherever residing, the receiver might maintain a petition, in a proceeding brought in this Commonwealth by a certificate holder for the common benefit of himself and other certificate holders, to obtain for such distribution the funds held by the receiver appointed here, and, after an allowance to the latter for his charges and expenses and the payment of the expenses of the suit, the balance of the reserve and benefit funds should be transmitted to the foreign receiver, provided that the court by whom he was appointed should distribute the whole fund within its control so that the benefit certificate members of the local branches here should receive the same proportionate dividend as benefit certificate members of branches in other States who should be admitted to share in the fund.

FIELD, C. J.   On October 26, 1892, James F. Failey, the receiver of the defendant corporation, appointed by the Superior Court of Marion County in the State of Indiana, presented his petition to the Superior Court of this Commonwealth to be admitted as a party respondent in the present suit, and he prayed that some person might be appointed as receiver ancillary to the proceedings in Indiana, with the usual authority to take possession of all the property of the corporation in this Commonwealth, to collect all debts due to said corporation here, and that, after deducting the proper charges and expenses, to be determined by the Superior Court here, said ancillary receiver should be ordered to " pay over to said Failey, receiver, for distribution to the membership of the said Order, including the citizens of this State, said funds, provided that, before such remittance be made, this court [the Superior Court here] reserves the right to require assurance from the Marion Superior Court aforesaid that, upon the receipt of said funds, and in making the distribution, all citizens of this State, members of said Order or creditors thereof, shall be entitled to receive as much ratably in propor-

tion to their several claims as the citizens of Indiana or any other State." This petition was denied by the Superior Court here, and Mr. Failey appealed to this court. On December 21, 1893, Joshua B. Stearns filed in the Superior Court his petition averring that he was a member of Local Branch No. 34 of the Order existing at Cambridgeport in the county of Middlesex, and was the owner of the certificate No. 35,953, for the sum of $1,000, issued by the defendant Order under date of January 30, 1886; and he recited various orders and decrees of the court in Indiana, and made in substance the same prayer as Mr. Failey. George W. Whitney was admitted as a copetitioner with Stearns. Both Stearns and Whitney were admitted as parties defendant, and at the hearing on this petition they offered competent evidence to prove the allegations of the petition, to which the plaintiff objected upon the following grounds: " first, that the petitioners, being defendants, had no standing in court for the relief sought for in the petition; secondly, that the allegations of the petition were insufficient to warrant the relief sought for." The presiding justice sustained the objections, and dismissed the petition, and the petitioners appealed.

The report of the justice of the Superior Court, before whom the hearing was had, then proceeds as follows: " It was then stipulated by the parties, in open court, that if the decree dismissing the petition was erroneous upon the ground that the petitioners had a right to be heard upon their petition, although defendants in the case, the said decree should be annulled, and the petition should be sent back for a hearing thereon, provided that the allegations of the petition were sufficient to authorize a decree, in the discretion of the court, for the petitioners. It was further stipulated that the twelfth edition of the constitution and by-laws of the defendant corporation should be considered a part of the record, and that any part thereof may be referred to at the argument, but without prejudice to the right of any party to question the accuracy of such constitution and by-laws in any future proceeding. Also that the reports of the receiver on file in this case may be referred to, and arguments may be based upon facts therein stated." Thereupon the justice, being of opinion that his decree

so affected the merits of the controversy that the matter ought to be determined by this court before further proceedings were had, reported the questions to this court.

The bill in the present suit was filed on August 24, 1892, in the Superior Court for the County of Worcester, by C. E. Buswell, against the Supreme Sitting of the Order of the Iron Hall, described as "a foreign corporation organized under the laws of the State of Indiana, and having its legal location in the city of Indianapolis and State of Indiana, and doing business in this Commonwealth," and against the "Local Branch No. 396 of the Order of the Iron Hall located at Worcester, in the county of Worcester and Commonwealth of Massachusetts, a voluntary association holding a charter from and working under the jurisdiction of the Supreme Sitting of the Order of the Iron Hall," etc., and against certain savings banks with which said local branch had deposited the twenty per cent of the amount received from the assessments collected from its members, "which amount constitutes a reserve fund, and is claimed to be the property of, and under the control of, said Supreme Sitting." The plaintiff Buswell was a member of said local branch, and the holder of a benefit certificate for $1,000. He prayed for a receiver of said local branch, for an injunction, and for a *pro rata* distribution of said reserve fund among the certificate holders of said local branch. This bill was afterwards amended by the plaintiff so that it should stand as brought "in behalf of himself and any and all other certificate holders of the Order of the Iron Hall hereinafter mentioned, who may hereafter be joined as parties herein," and the prayer of the bill was amended so that it should read as follows: "that a receiver may be appointed to take charge of all the business, property, goods, effects, and assets of said defendant, the Supreme Sitting of the Order of the Iron Hall within this Commonwealth, and distribute the same among certificate holders of the local and sisterhood branches, organized in, and creditors residing in, this Commonwealth, according to law and the order of the court"; and an order was obtained that all such local and sisterhood branches pay over and deliver to the receiver appointed by the court all property of the principal defendant, and all moneys and property deposited by the officers of the local branches in

this Commonwealth; and by a subsequent order the receiver was empowered " to receive any and all property out of this Commonwealth belonging to said defendant corporation, the Supreme Sitting of the Order of the Iron Hall, and deposited in any banking institution, or with any corporation, association, or individual, by officers or trustees of local branches in this Commonwealth; and all moneys, funds, and property, wherever situated and being, which in law or in equity belong to certificate holders members of subordinate branches or lodges within this Commonwealth." The receiver appointed here holds a large sum of money which he has collected from these local branches, or from their officers or depositaries. A decree has been entered in the Superior Court to the effect that the reserve fund be distributed " among the members of local and sisterhood branches organized within this Commonwealth, the funds of which branches have been transferred to the receiver here appointed," etc. The decree also declares that what is called the general fund, as well as the paraphernalia, etc., is to be deemed to be the property of the local and sisterhood branch the members of which contributed to the same, and that this property is to be charged with the debts of such branch, and directs that it shall be repaid or redelivered to such branch, provided that the branch " has so far maintained its organization as to empower some person to receive the same "; otherwise, it is to be applied to the payment of the debts of the branch in full or *pro rata*, as the case may be, the surplus, if any, to be distributed among the members of the branch to which the property belonged.

Although the facts averred in the petition of Mr. Failey and the petition of Stearns have not been found to be true, yet for the purpose of determining the questions of law before this court the averment of facts in these petitions must be taken to be true. The principal facts are that Mr. Failey was appointed receiver on August 23, 1892, by the court in Indiana, under the laws of which State the corporation was organized. It is not contended that the court in Indiana did not have jurisdiction over the defendant, or that the appointment of a receiver was not within the power of that court. The receiver appointed by that court was empowered to sue, in his own name as receiver, all persons within or without the State of Indiana, and to receive

and collect all the property of the defendant within or without that State, and all persons within or without that State were ordered to deliver said property to said receiver.   The defendant, its officers and agents, were ordered to assign and deliver to said receiver all its property and effects, and it appears that the defendant has assigned and transferred to said James F. Failey, as such receiver, " all the moneys and securities of every kind belonging to the reserve fund of said Supreme Sitting, and held by each of the branches thereof, and the officers of such having the same in possession and control."   Mr. Failey, then, on the facts averred, is not merely a receiver, but he is an assignee of the reserve fund of the Order held by the several branches as fully as the court in Indiana and the assignment of the Supreme Sitting of the Order, in accordance with the decree of that court, can make him an assignee.

Without considering the right of a receiver appointed by a court of equity in a foreign jurisdiction under general equity powers to sue or intervene in his own name in this Commonwealth, we think it clear that Mr. Failey, on the allegations of his petition, must be taken to be, in effect, an assignee of a foreign insolvent corporation, acting under a court of competent jurisdiction of the State by which the corporation was created, and in which its principal offices were situated and its principal business was carried on.   We think such an assignee has a standing to intervene in and be heard on a proceeding in this Commonwealth for the appointment of a receiver of the property of the corporation found here.   We assume that the proceedings in this Commonwealth, whether they be regarded as ancillary to the proceedings in Indiana or as independent proceedings, are within the jurisdiction of the Superior Court here, and we infer that, as no creditor of the defendant has appealed from the decrees entered by that court, the creditors are satisfied therewith.   See St. 1892, c. 435.   The receiver reports that he holds only $697.85 money belonging to the general fund, with a small amount of other property, against which there are outstanding claims far exceeding the amount of the money and property belonging to this fund in his hands.   The amount of the claims of creditors upon this fund is not stated in the papers before us.

The only dispute between the parties before us is with regard to the benefit and reserve funds, and the rights of benefit certificate holders thereto. This renders it necessary to examine the constitution and laws of the Order. Law I. § 1, is as follows : " There shall be attached to this Order a Benefit Fund, in which members may participate (except social members), as they may severally elect, either in the sum of one thousand dollars, eight hundred dollars, six hundred dollars, four hundred dollars, or two hundred dollars, on which they shall pay the rates and be entitled to the benefits prescribed in the following table," etc. One of the objects of the organization, as stated in Article II. § 3, of the constitution, is as follows : " To establish a Benefit Fund from which those who have held membership in the Order for thirty days or more may, should they so desire, on proper application, and complying with all the rules and regulations governing said Benefit Fund, become participants therein, and may receive the benefit of a sum not exceeding twenty-five dollars per week, nor more than one half of the amount of the benefit certificate held by each member, when, by reason of disease or accident, they become totally disabled from following any avocation; or in case of death, if a member for more than two years, one half of the amount of the benefit certificate will be paid, less benefit received ; or an amount of not more than one thousand dollars when they have held a continuous membership in the Order for seven years. Provided, however, that the sum total drawn from this Order by any of its members shall never exceed, in sick, disability, death, and final benefits, the sum named in the benefit certificate." This benefit fund is derived from assessments upon the holders of benefit certificates, which assessments are made by the Supreme Sitting of the Order from time to time, and out of which benefits are paid in case of the sickness, disability, or death of a member. The assessments are made through the local branches, and eighty per cent thereof are sent to the supreme cashier of the Supreme Sitting. Law II. § 1, is as follows : " Twenty per cent of the amount received by each branch on each assessment shall be set aside and retained as a Reserve Fund, which fund is the property of the Supreme Sitting, and shall be subject to its control at all times, as hereinafter provided. At the expiration of the

first term of six years and six months from the date of the organization of the Order, one seventh of the Reserve Fund then on hand shall be called for by the supreme accountant and used by the supreme cashier in the payment of benefits, and annually thereafter one seventh of the Reserve Fund on hand shall be called for, and used in like manner, unless otherwise ordered by the Supreme Sitting." The greater part of the property in the hands of the receiver appointed by the Superior Court here is derived from this reserve fund held by the local branches organized within this Commonwealth.

An examination of the various provisions of the constitution and laws of the Order convinces us that the legal title to this reserve fund is in the Supreme Sitting of the Order, and not in the different local branches; that the twenty per cent of the assessment retained by each local branch differs from the eighty per cent transmitted to the Supreme Sitting mainly in this, that the possession and supervision, subject to the constitution and laws, remain with the local branches. The whole fund is for the protection of and payment of benefits to holders of benefit certificates, and the reserve fund seems to us essentially a part of the benefit fund, although it may be in the nature of a safety fund to insure the payment of maturing certificates. See *Burdon* v. *Massachusetts Safety Fund Association*, 147 Mass. 360. We infer that the Superior Court here has not regarded the reserve fund held by each branch as the special property of that branch. It has ordered all the reserve funds received from all the branches in this Commonwealth to be distributed as one fund among the certificate holders of all said branches. It appears, indeed, from the receiver's second report, that there are some branches in this Commonwealth which have transferred the reserve fund in their possession to Mr. Failey as receiver, and we infer that the decree of the Superior Court here does not admit certificate holders of these branches as claimants to the fund in the possession of the receiver here.

It appears by the petition of Mr. Failey, that the court in Indiana has authorized him to collect all the moneys belonging to the Order in the possession of all the branches wherever organized, for the purpose of equally and ratably distributing them among the creditors and certificate holders of the corporation,

whether residing in Indiana or elsewhere, and the purpose of Mr. Failey in filing his petition here was to obtain the funds in the hands of the receiver here for such distribution.   Mr. Failey represents that in the States and Territories of the United States there are about 62,790 members, of whom about 10,022 are Massachusetts members, and that he has in his possession as receiver more than $700,000 in money.   The second report of the receiver appointed here shows that he has in his hands about $280,000, which, with the exception of the amount hereinbefore stated as received from the general fund, has been received from the reserve fund or the benefit fund, nearly all being received from the reserve fund found in the possession of the branches in this Commonwealth.   Under the constitution and laws of the Order, we regard the whole benefit fund, including the reserve fund, as held in trust for the holders of all the benefit certificates of the Order.   *Coe* v. *Washington Mills*, 149 Mass. 543. This reserve fund, as held by each branch under the constitution and laws, was not intended to be used exclusively in paying benefits to the members of that particular branch, but was ultimately to be transmitted to the supreme cashier of the Supreme Sitting, to be used for the payment of benefits generally. Having been kept apart from the general benefit fund, the reserve fund in the possession of each branch is shown to have been derived exclusively from assessments upon the past or present certificate members of that branch, and in this respect it may differ from the benefit fund generally, although in the accounts of property kept by the Supreme Sitting it should appear what proportion of the benefit fund in its possession has been derived from each branch.

It is impracticable to lay down a general rule which must govern all receivers appointed here of the property of foreign corporations found in this Commonwealth.   If any person has obtained by attachment or otherwise any valid lien on the property of the corporation in this Commonwealth, such lien is not dissolved by the filing of the bill and the appointment of a receiver, but must be enforced.   *Hubbard* v. *Hamilton Bank*, 7 Met. 340. *Taylor* v. *Columbian Ins. Co.* 14 Allen, 353.   *Folger* v. *Columbian Ins. Co.* 99 Mass. 267.   When there is no such lien, the general principle is that the property should be so administered that all

claimants should receive their equal ratable shares of the whole property of the corporation, and the court here will, if necessary, protect claimants who are citizens of Massachusetts in their right to receive such shares. This is the principle adopted by St. 1890, c. 321, relating to the insolvency of certain foreign corporations in this Commonwealth. It is there provided that it shall be the duty of the assignees appointed here, " so far as practicable, to distribute such assets in such a manner that all creditors of the insolvent corporation, whether within this State or elsewhere, shall receive proportionate dividends out of the assets of said corporation, whether the same are within the control of said assignees or not." § 2. The same principle was adopted in the settlement of the insolvent probate estates of deceased persons not resident within this Commonwealth before there was any statute on the subject. *Dawes* v. *Head*, 3 Pick. 128. *Davis* v. *Estey*, 8 Pick. 475. The subject is now regulated by statute; Pub. Sts. c. 138; and the same principle is adopted in the statutes. The fourth section of this chapter, however, is as follows: " To this end his estate shall not be transmitted to the foreign executor or administrator until all the creditors who are citizens of this Commonwealth have received the just proportion that would be due to them if the whole estate of the deceased, wherever found, that is applicable to the payment of common creditors, were divided among all the creditors in proportion to their respective debts, without preferring any one species of debt to another; and no creditor who is not a citizen of this Commonwealth shall be paid out of the assets found here, until all those who are citizens have received their just proportion as provided in the preceding section."

In the present case, the holders of benefit certificates do not seem to us to be common creditors of the defendant corporation, and the bill in the present case was not brought by a single creditor to collect a debt. It was brought by a holder of a certificate for the common benefit of himself and other holders of certificates, who, in a sense, are the beneficiaries of the benefit and reserve funds. The holders of certificates have been contributors to these funds, which were intended to be used for the payment of benefits to all such holders. It has become

impracticable for the corporation to carry out the purposes for which it was organized. The claims of the certificate holders have in general not matured, but, as an equitable method of determining the amount due them from these funds, the claims have been made up by taking the sum of all the assessments paid by each certificate holder in good standing in the Order, and deducting from it all amounts received by him for sick or disability benefits. As these funds were intended to constitute one fund for the benefit of all holders of benefit certificates who were members of the Order, we think it equitable that, so far as practicable, it should be so administered. It becomes, then, a question of the best practicable means of doing this. It would be extremely difficult to apply the rule established by Pub. Sts. c. 138, § 4, to the present case, as there are funds and local branches in all or nearly all the States of the United States. Some branches in one or more of the States under the laws of the Order may have sent their reserve funds to the Supreme Sitting before the institution of any proceedings in court, and the proportion between the amount of the funds and the amount of the claims of the certificate holders in any one State must differ from that in every other. It might be almost impossible to determine in any State what would be the ratio between the aggregate of all the funds wherever found, and the aggregate of all the claims of all the certificate holders wherever they reside. If the courts of each State should distribute all the funds found within the State exclusively among the certificate holders resident in that State, there necessarily must be great inequality in the distribution.

There is no statute which compels the court to proceed in any particular manner in the case at bar. It has been said in argument by the counsel for Mr. Failey, that by granting his petition the certificate holders resident in Massachusetts will probably receive more than under the decree made by the Superior Court. If this were certain, then, if that decree were carried into effect, it might be equitable that the certificate holders who have shared in the benefits of that decree should also be permitted to prove their claims before the court in Indiana, in order to obtain another dividend, so that they might

receive in the whole the same proportionate dividend as other members. But this is not certain; and if it were, it ought not to affect the general principles governing the distribution, although, under some circumstances, it might affect the mode of distribution, and, if the larger part of all the funds is in the hands of the receiver in Indiana, that fact deserves to be considered. If all members who are holders of benefit certificates ought to share proportionately in the whole fund, there ought not to be a decree that the fund here should be distributed among the members of the local branches existing here, if thereby such members would obtain more than their just proportion of the whole sum. If the money in being transmitted to the receiver in Indiana were in danger of being misappropriated or misapplied, or if the difficulties attending the transmission of the money and the proof of claims there by the certificate holders who are members of the local branches in this Commonwealth were so great as to make such proceedings impracticable, we have no doubt of the power of the court here to order a distribution of their proportionate shares among the certificate holders who are inhabitants of Massachusetts, or among those certificate holders who are shown to have contributed to the funds in the hands of the receiver here, whether inhabitants or not. From the necessity of the case the court here must have some discretion, and must reasonably protect the rights of the citizens of the Commonwealth in the administration of the trust. But in the administration of such a trust, when the property of the trust is found in many different States, comity requires that we should do all that safely can be done to insure, as far as practicable, a speedy and equitable distribution of the whole property among those entitled to it. One difficulty in this case, as we infer from papers submitted to us which are not strictly a part of the record before us, may be, that, by the decree of the court here, the general creditors of the local branches are not permitted to prove their claims against the benefit or reserve fund, but only against the general fund, which has been found to be the property severally of the different local branches. We infer that such general creditors are permitted in Indiana to prove their debts against the whole fund in the hands of the receiver appointed there *pari passu*

with the holders of certificates. We are not informed whether such debts are large, nor what is the amount of the general fund in the hands of the receiver there. If this difference in the administration is not such as considerably to affect the dividends of the certificate holders, we do not think it is sufficient to affect our decision. We infer that the court in Indiana and the court here have adopted the same principles in determining what holders of certificates are entitled to prove claims, and in what manner the amount of each claim is to be made up.

If the court in Indiana is willing substantially to distribute the whole benefit and reserve fund equitably and ratably among all the benefit certificate holders who are members of the Order, as it wishes to do if the allegations of the petitions are true, we think that, on the facts stated in the petitions, it should receive the aid of the courts here in doing this. The receiver here should be allowed his charges and expenses, and all expenses of the suit here should be paid, and he should be protected against all suits and claims; but the balance of the reserve and benefit funds should, if the allegations of the petitions be found to be true, be transmitted to the receiver in Indiana, provided it appears by the decree of that court that it will admit the proof of claims against the reserve and benefit funds as made in and allowed by the court here when regularly certified by the court here, subject to such revision by the court in Indiana as justice may seem to that court to require, and will distribute the whole fund in its control so that the benefit certificate members of the branches in Massachusetts shall receive the same proportionate dividend as the benefit certificate members of branches in Indiana and in other States who are admitted to share in the fund. If the time is not extended so as to admit such an allowance of the proof of these claims in the Indiana court on an equality with others, when the money is in fact ready to be transmitted, then the petitions should be dismissed. See *National Trust Co.* v. *Miller*, 6 Stew. 155, 158; *Parsons* v. *Charter Oak Ins. Co.* 31 Fed. Rep.. 305; *Fry* v. *Charter Oak Ins. Co.* 31 Fed. Rep. 197; *Jennings* v. *Philadelphia & Reading Railroad*, 23 Fed. Rep. 569. The petitioners, including Mr. Failey, have a right to be heard on their petitions, and are not strictly to

be regarded as either plaintiffs or defendants, but as persons alleging an interest in the property in the custody of the court, and intervening in the cause. The case is remanded to the Superior Court, with instructions to hear the petitions, and to proceed therein in accordance with this opinion.

*So ordered.*

*G. F. Williams & G. W. Anderson,* for Failey and Stearns.

*W. S. B. Hopkins,* (*H. L. Parker & A. S. Pinkerton* with him,) for Buswell.

*C. U. Bell,* for certain certificate holders.

*L. C. Southard,* for other certificate holders.