EAST TENNESSEE LAND COMPANY *vs.* JOSEPH R. LEESON.
SAME *vs.* JOHN HOPEWELL, JR.

Suffolk.     January 19, 20, 1903. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, LORING, & BRALEY, JJ.

*Equity Pleading and Practice*, Master's report. *Damages. Interest.*

By a decision reported in 176 Mass. 310, it was determined, that each of the defendants in this case held certain shares of the capital stock of the plaintiff corporation for which he must account to the plaintiff. The shares when issued to the defendants had no market value, because the plaintiff had not begun to do business and its stock had not been placed on the market. By a master's report it appeared, that the master found that August 1, 1890, was the time when the value of the stock became fixed, and that its value was $45 a share. *Held,* that the facts stated in the master's report warranted this finding, and that the evidence not being reported the findings of fact by the master must be taken to be true.

Where defendants were found to be accountable to the plaintiff, a corporation, for certain shares of the plaintiff's capital stock held by them, and a certain day was found to be the time when the value of the stock became fixed at a certain amount per share for which the defendants were held to be liable, and the defendants had not been prevented from tendering the stock to the plaintiff or offering to pay its equivalent at any time, it was *held,* that the defendants were chargeable with interest from the day when the value of the stock became fixed, and that they were not entitled to a rebate of interest for a period during which the suits against them temporarily had been suspended by an order of court made in a suit to which they were not parties.

TWO BILLS IN EQUITY, filed May 31, 1895, to recover alleged secret profits of the defendants as promoters and directors of the plaintiff, a corporation organized under the laws of the State of Tennessee, before this court at previous stages as reported in 176 Mass. 310 and 178 Mass. 206.

At its present stage the case came up by the defendants' appeal from decrees of the Superior Court confirming a master's report and awarding damages to the plaintiff as found by the master.

*G. F. Ordway,* (*J. H. Sherburne, Jr.* with him,) for the defendants.

*W. H. Russell,* of New York, (*L. G. Farmer* with him,) for the plaintiff.

BRALEY, J.     After the former decision in this case, *Hayward* v. *Leeson,* 176 Mass. 310, the opinion in which is made by agree-

ment of parties a part of the record, the bill was amended by substituting the East Tennessee Land Company as plaintiff in place of John K. Hayward, receiver, and the plaintiff then filed its election to proceed against each defendant for damages suffered in consequence of his acts as alleged in the bill of complaint. Thereupon the case was sent to a master to assess the damages, and make report to the court together with such facts and questions of law as either party might request. On the coming in of the master's report the defendants filed exceptions thereto upon the ground that his findings were not warranted by the testimony before him, and were contrary to and against the weight of the evidence. These exceptions were severally overruled by the Superior Court and a final decree entered confirming the report and awarding the plaintiff damages as found by the master, and from this decree the defendants appealed to this court.

The evidence taken before the master was not reported, and the findings of fact made by him must be taken as true for the purposes of this case, and cannot be reviewed or revised on the exceptions taken by the defendants. *Freeland* v. *Wright*, 154 Mass. 492

Under the rule issued in this case the report of the entire evidence was unnecessary and uncalled for and the master was only required at the request of the defendants to report evidence so far as might be material to clearly bring before the court any question of law raised before him at the hearing. *Parker* v. *Nickerson*, 137 Mass. 487, 493.

The master has followed this course in his report, and the defendants do not now claim that any matters are open under the exceptions but the two questions presented at the argument.

By the former opinion it was determined that each defendant held two hundred and fifty shares of the capital stock of the plaintiff, issued July 3, 1889, for the value of which under the election made as to money damages, each must account to the plaintiff, and as the shares of the plaintiff corporation at the time when the defendants took their stock had no market value because of the fact that though the corporation had been organized it had not begun to do business and its stock had not been placed on the market, " the date at which damages must be

assessed must be carried forward to the date when the value of the stock was fixed." Upon the evidence before him the master has found and fixed this date as August 1, 1890, and the value of the stock at $45 a share, to which findings the defendants except upon the ground that they are not warranted by the facts found and set out in his report.

It appears from the report that when the company was organized its total capital was placed at $2,000,000 and the par value of the shares at $100 each, and of this amount $800,000 in value of its capital stock was issued to the Phœnix Land Company or persons whom it designated. Subsequently the par value of the stock was changed to $50 a share, and the remaining $1,200,000 of capital stock was then disposed of by the company and issued at par less discounts and commissions to a large number of persons, who became stockholders, some as investors, others upon the solicitation of the secretary of the company, or its agents, but the exact amount subscribed for under either of these methods was uncertain. The first issue of stock was made sometime in November, 1889, and the last September 30, 1891, and all but five hundred fifty-two and one quarter shares — the par value of which was $27,612.50 — were issued before January 1, 1891. Of the shares representing this $1,200,000 of capital more than one half was sold by the company before March 18, 1890, and the great majority of such shares prior to August 1, 1890. Sales of the stock thereafter as found by the master were made, some at public auction in April, May and June of the year 1890 at prices ranging from $40 to $45 a share, and in November, 1890, and January, February, March, June, July, August and September of 1891, at prices from par to $24.50 a share. Private sales of the stock were also made in September, October, and December of 1890, at $45, $47, and $47.50 and $50 a share. All these sales were made in Boston, upon the basis of a par value of $50 a share, and were evidence sufficient to show the fact that there were buyers ready and willing to purchase the stock in the market at public auction or private sale paying therefor in the one case from $45 to $50 a share, and in the other from $24.50 a share up to par value, and it became a question of fact whether such sales were proved, and whether they afforded a fair standard.

As the stock had no market value when issued to the defendants evidence of subsequent sales must be resorted to in order to ascertain the time when the stock in the opinion of investors and buyers was recognized as being of commercial value.

No uniform rule can be laid down in such a case, the time must be fixed at some point after the issuing of the stock to the defendants, and when its value had become apparent by actual sales. While this to a certain extent must be arbitrary it does not follow as argued by the defendants that the first sale made of the stock in April, 1890, and within the period or time mentioned, determines this question. Here was a foreign corporation the assets of which consisted of land and improvements thereon in Tennessee, and the stock of which had been largely subscribed for and taken at the personal solicitation of its agents, and which did not include an appreciable part of its capital that had been issued apparently in fraud of the rights of the company, and when its stock was put upon the open market for the first time in April, 1890, it is obvious as a matter of common business experience that under these conditions more than one sale would be necessary to determine whether it had a market value or not.

The master has found that more than one half of the shares representing three fifths of its capital stock was sold by the company before March 1, 1890, and the larger part prior to August 1, 1890, and that there were subsequent dealings in the stock at private sale and by public auction. It would seem that this was sufficient evidence from which the time might be ascertained when the stock had a recognized market value. *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313, 315. *Bradley* v. *Hooker*, 175 Mass. 142, 143. *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 260. He states in his report that in ascertaining this date, and in fixing the value, he took into consideration all the evidence offered on these questions, treating no one sale or date as conclusive of the fact to be determined, and it was for him to say, as judge of the facts, where the line should be drawn. His findings fixing the date when the market value of the stock should be ascertained and determining that value as ninety per cent of par, and that each defendant should account to the plaintiff company for $22,500 as

the value of the stock issued to him, seem to be just to both parties, are final, and cannot be revised.

· These exceptions of the defendants disclose no error of law and must be overruled.

The defendants further excepted to the allowance of interest by the master from August 1, 1890, upon the amount found due. The date when the market value of the stock was fixed is the date when the defendants must be held to account to the plaintiff for the value of the stock issued to them, and is analogous to the rule in an action for the wrongful conversion of personal property and to recover damages therefor, where interest is allowed from the date of the wrongful taking. *Kennedy* v. *Whitwell*, 4 Pick. 466.

The fact that the prosecution of these suits by the receiver was temporarily suspended from December 15, 1895, to July 1, 1897, under the circumstances shown by the record, — *Hayward* v. *Leeson*, 176 Mass. 310, 314, 315, — does not entitle them to a rebate of interest for that time, and bring them within the rule that, as interest is allowed not as part of the principal but only as damages for its detention, if the debtor at the request or by compulsion of the creditor retains the money, or, by legal process whereby the right of the creditor to the fund is involved, becomes a stakeholder for him, or is restrained and enjoined from making payment to any one, interest is not chargeable during the time the money is so held or detained. They were not parties to the suit in which the order was made,* and were not bound by or required to obey it. Neither have the defendants at any time during this litigation been prevented or restrained from tendering back the stock to which as between themselves and the plaintiff they had no title, or offering to pay its equivalent by way of money damages. *Stevens* v. *Barringer*, 13 Wend. 639.

We find no error of law and no hardship to the defendants in this case under these circumstances in requiring them to pay interest on the principal sum as computed by the master, and this exception must be overruled.

---

* The suit referred to was in the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee. See 176 Mass. 314, 315.

The decree appealed from is well warranted by the pleadings and findings of the master and must be affirmed.

*Decree affirmed.* ·