CHARLES GERDING, JR. *vs.* EAST TENNESSEE LAND
COMPANY & another.

CLASSEN MOWRY, administrator, *vs.* SAME.

NATHANIEL W. MYRICK *vs.* SAME.

BYRON A. BEAL *vs.* SAME.

Suffolk.    December 11, 1903. — April 1, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Jurisdiction.    Equity Jurisdiction.*

A creditor of an insolvent corporation, organized in another State, who voluntarily has become a party to a general creditors' suit against the corporation in the Circuit Court of the United States in a district of the other State, in which a receiver has been appointed, will not be allowed to maintain a suit of equitable attachment under R. L. c. 159, § 3, cl. 7, in this Commonwealth, for the purpose of reaching funds which have been held by this court to be due to the corporation, the title of the receiver being good as a matter of comity.

In a general creditors' suit against an insolvent corporation in another jurisdiction, in which a receiver had been appointed, an order was made that such creditors as should indemnify the receiver for costs and expenses might prosecute certain claims of the corporation, and should be entitled to the proceeds thereof coming into the hands of the receiver to the exclusion of other creditors and persons who did not within thirty days after notice of the order join in providing security for the payment of costs and expenses. A creditor then a party to the suit

did not elect to join in the prosecution of the claims. By a subsequent order the time for electing to share in the prosecution of the claims was extended. Before this extension had expired, the creditor by leave of court withdrew from the general creditors' suit. The creditors who joined in the expenses prosecuted in this Commonwealth the claims covered by the order to a successful issue. Nearly four and a half years after he had elected not to contribute to the prosecution of these claims, and nearly three years after their successful prosecution by those who did contribute, the creditor, who had withdrawn from the general suit, brought a suit of equitable attachment in this Commonwealth, under R. L. c. 159, § 3, cl. 7, to reach the funds decreed to be due the corporation in the Massachusetts suits and prevent their passing to the hands of the receiver. *Held,* that the plaintiff had no standing in equity to maintain such a bill, that having elected not to contribute to the prosecution of the Massachusetts suits he in equity must yield to the prior rights of the creditors who contributed to them and prosecuted them to a successful termination.

LORING, J.   On November 18, 1893, a general creditors' bill was filed in the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee against the East Tennessee Land Company, a corporation created by the State of Tennessee, and having its principal place of business in that State. On November 20, 1893, a decree was made in that suit declaring that the land company was insolvent, directing all creditors to come in and prove their claims on or before April 1, 1894, and appointing receivers to take possession of its property and collect all sums due to it. Acting in pursuance of this decree and of subsequent orders recited in the opinion in *Hayward* v. *Leeson,* 176 Mass. 310, 324, and hereinafter stated, suits were begun in the Superior Court of this Commonwealth to recover from one Leeson and one Hopewell secret profits realized by them as promoters of the company. These suits were held by this court in *Hayward* v. *Leeson* to be well brought. It appeared, however, that there had been no assignment of these claims to the receiver, and for that reason it was held that the suits should have been begun in the name of the company. In pursuance of that opinion, the receiver was allowed to amend by making the company the nominal plaintiff. *East Tennessee Land Co.* v. *Leeson,* 178 Mass. 206. These suits have been before the court twice since then. *East Tennessee Land Co.* v. *Leeson,* 183 Mass. 37. *East Tennessee Land Co.* v. *Leeson, ante,* 4.

The suits now before us are four bills of equitable attachment, brought by persons claiming to be creditors of the East Tennes-

see Land Company for the purpose of having the funds which this court held were due to that company from Leeson and Hopewell applied in payment of the debts due these plaintiffs respectively; three of them were originally filed in October, 1900, and one (that by Beal) in December, 1902. They have been defended by the receiver in the name of the company.

The principal defence set up is that these plaintiffs have voluntarily become parties to the general creditors' suit in the United States Circuit Court in Tennessee, and for that reason cannot maintain these bills of equitable attachment in this State.

The decree of the Circuit Court of the United States sustaining the bill as a general creditors' bill and appointing receivers to take possession of the property of the company, for the purpose of reducing it into money and distributing it *pro rata* among the creditors of the company, has the same effect as an involuntary assignment in insolvency proceedings. It is settled in this country that such a sequestration has no effect, *proprio vigore,* beyond the territorial limits of the State in question, and that it will not be allowed as matter of comity in the courts of another State to prevail against any remedy which the laws of the latter afford to its own citizens against property of the company within its jurisdiction. *Taylor* v. *Columbian Ins. Co.* 14 Allen, 353. *Witters* v. *Globe Savings Bank,* 171 Mass. 425, 426. We assume for the purposes of this case that citizens of other States not citizens of the State in which the attachment is made are entitled to the same rights against property in this Commonwealth as citizens of the Commonwealth. See in this connection *Blake* v. *McClung,* 172 U. S. 239, and 176 U. S. 59. See also *Blake* v. *Williams,* 6 Pick. 286, 308; *Sturtevant* v. *Armsby Co.* 66 N. H. 557; *Paine* v. *Lester,* 44 Conn. 196; *Milne* v. *Moreton,* 6 Binn. 353. Indeed, the courts of New York go so far as to extend this right to citizens of the same State as the insolvent. *Barth* v. *Backus,* 140 N. Y. 230. Myrick is a citizen of Massachusetts; the other three plaintiffs are citizens of States other than the State of Tennessee, Gerding and Beal being citizens of New York, and Mowry a citizen of the State of Rhode Island.

We are of opinion that where a non-resident creditor voluntarily becomes a party to the insolvency proceedings he thereby elects to take advantage of and become bound by those proceed-

ings, and cannot thereafter resort to remedies against the property of the insolvent in other States to which otherwise he would have had a right to resort. See *Wilson* v. *Keels*, 54 S. C. 545. This depends upon a principle similar to that on which it is held that a creditor of another State who voluntarily submits to such involuntary proceedings is bound by a discharge granted in the course thereof, as to which see *Cole* v. *Cunningham*, 133 U. S. 107, 114.

It remains to state in detail the claims of each of the four plaintiffs, and in what way they have become parties, if they have become parties, to the insolvency proceedings in the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

The first bill now before us was brought by one Gerding as assignee of one Meissner. By deed dated February 1, 1893, Meissner conveyed to the East Tennessee Land Company a tract of land for $28,000. Of this purchase money $500 was paid down, and three notes were given by the land company for the balance: one for $7,500, and the other two for $10,000 each; and these three notes were secured by ten first mortgage bonds of the company for $1,000 each. The first two notes have been paid. The note in question was dated February 1, 1893, and was due February 1, 1894. Meissner proved his note and the ten bonds, in the insolvency proceedings, and they are allowed in the decree establishing the debts of the East Tennessee Land Company.

Before stating the terms of this decree and how it dealt with the Meissner claim, it will be necessary to state more in detail the proceedings in the Circuit Court of the United States.

On March 23, 1894, (that is to say in the March next after the November in which the creditors' bill was filed,) suit was brought by the Central Trust Company of New York, trustee under a mortgage of the property of the land company, to foreclose the mortgage; and by an order dated the same day the two suits were consolidated. On February 27, 1897, a decree was entered in the consolidated causes, in which, after declaring that the mortgage was duly executed, that bonds secured by it are outstanding and that the lien thereby created is a valid

lien on the property thereby conveyed, it is decreed that the amount of the said mortgage debt which has been proved is $1,110,686.58, "and that bonds of said issue to the par value of $54,150 are outstanding in addition to those proven in these causes as enumerated above for which no claims have been filed in these causes, and the names of the holders of which are unknown to the court; and that there is now due and payable to the holders of the said $54,150 of bonds, the principal of said bonds together with such interest thereon as shall hereafter be proved to be unpaid thereon upon presentation of said bonds for payment out of the proceeds of sale as hereinafter provided." It is then declared that the first bill "has been sustained as a general creditor's bill and the assets of said corporation shall be sold and applied to the payment of its debts, under the several bills in these consolidated causes," and it is decreed (1) by paragraph twenty, that the receivers' indebtedness amounts to $9,631.10; (2) by paragraph twenty-one, that the indebtedness of the company secured by vendor's liens on land of the company which are prior in point of time to the time of the mortgage, is $141,794.15; (3) by paragraph twenty-two, that the indebtedness of the company secured by vendor's liens which are subsequent in point of time to the time of the mortgage, amount to $23,439.66; (4) by paragraph twenty-three, that the indebtedness secured by pledge of personal property amounts to $202,409.09; and (5) by paragraph twenty-four, that the amount of the unsecured debt of the company is $224,818.04. As part of each of the paragraphs mentioned is a statement in detail giving the name of the several creditors and the amounts found to be due to them respectively covered by the paragraph in question.

The decree makes provision for the sale of the property of the company, and after doing so, "it is further ordered, adjudged and decreed that the several persons mentioned in paragraphs eleven, twenty-one, twenty-two, and twenty-three of this decree are creditors of the East Tennessee Land Company to the amounts shown to be severally due them by the recitals in said paragraphs, and it is, therefore, adjudged and decreed that they have and recover from the East Tennessee Land Company the amounts severally due to them as aforesaid, and that, as to any

balance due them after the proceeds of any and all properties upon which there are specific liens in their favor have been applied, they shall be general creditors of the East Tennessee Land Company, and as such entitled to their *pro rata* share of its general estate and the proceeds of its property not otherwise appropriated under the terms of this decree ; that the several persons mentioned in paragraph twenty-four of this decree are creditors of the East Tennessee Land Company to the amounts shown to be severally due them by the recitals in said paragraph, and it is, therefore, adjudged and decreed that they have and recover of the East Tennessee Land Company the amounts severally due them as aforesaid."

Meissner's ten bonds are included in the $1,110,686.58 mentioned in paragraph eleven, and his note is included in the $141,794.15, mentioned in paragraph twenty-one.  By paragraph thirty-two of the decree it is provided that "no part of the distributive share herein directed to be paid to Frederick Meissner or Charles H. Younger upon their vendor's lien, or upon the bonds held by them as collateral security, shall be paid to them until the further order of this court."

This proviso was inserted in the decree because it was claimed by the receiver that there is nothing due to Meissner on the ground that, by the written agreement of purchase a proportionate part of the price should be abated in case there was a failure of title in acreage warranted by the deed, and that there was in fact such a failure of title.

Meissner assigned his claim to the plaintiff Gerding after the rendition of this decree.

After the assignment Gerding brought a petition of intervention which is still pending.  The lands conveyed by Meissner "are in the possession of John K. Hayward as receiver of the East Tennessee Land Company, pending the determination of the rights of the parties under said petitions of intervention and the answers thereto in said consolidated causes."

It is plain that the owner of the Meissner note or of the bonds given as collateral security for the payment of it has voluntarily become a party to the insolvency proceedings in the Circuit Court of the United States, that Gerding succeeded to his rights and is now pursuing them in those proceedings.  Under these

circumstances he cannot maintain a bill of equitable attachment against the property of the company in this Commonwealth. As against this plaintiff the title of the receiver is good as matter of comity.

The second suit was originally brought by one Daniel A. Mowry. He died August 11, 1901, and Classen Mowry, the administrator of his estate, has been admitted to prosecute the bill. Mowry owned eight bonds, which he intrusted to one Schumacher, which were proved by Schumacher and are included in the $1,110,686.58, covered by paragraph eleven of the decree.

It appears that there is a contest between Mowry and the Harriman Land Company as to whether Mowry's judgment has become its property, and Mowry is a stockholder in the land company. That is immaterial here. It appears further that Mowry also claims that Schumacher, to whom he intrusted his bonds, had no authority to have them reduced to judgment. Whether he had or not, judgment on them has been recovered in the consolidated causes which Mowry has not sought to have avoided although those causes are still pending. The owner of this claim now holds judgment for it in the insolvency proceedings, and cannot maintain this bill to enforce his demand by attachment of property in this Commonwealth.

The third bill is brought by one Nathaniel W. Myrick, claiming by assignment from the executor and executrix of Nathaniel Myrick. Nathaniel was the holder of a note for $3,120 secured by mortgage bonds of the East Tennessee Land Company of the par value of $3,100. In addition he held mortgage bonds of the face value of $11,000. The executor and executrix of Nathaniel Myrick " filed the interest coupons of said bonds which remained unpaid for a time prior to April 1, 1894, amounting to the sum of $717.85," in the insolvency proceedings in the Circuit Court of the United States, and they are included in the $1,110,686.58, covered by paragraph eleven of the decree. After the entry of this decree, covering *inter alia* these coupons, the executor and executrix assigned to the plaintiff the note for $3,120, the bonds and claim for $717.85, under the decree of February 27, 1897. On the insolvency of the company and the bringing of the general creditor's bill, creditors were put to their election as to the

course to be pursued by them, and among the creditors who had to make their election were the executor and executrix of Nathaniel Myrick. They elected to prove under the insolvency proceedings the interest due on said bonds which remained unpaid for a time prior to April 1, 1894. We are of opinion that they could not separate the debt in making an election, and that by proving on the coupons they made an election as to the bonds, and by proving on the collateral thèy made an election as to the note for $3,120 for which $3,100 of the bonds were held as security. The present plaintiff has succeeded to the rights of the executor and executrix and to nothing more, and is precluded from maintaining this bill by the voluntary action of his assignor in becoming a party to the insolvency proceedings in the Circuit Court of the United States in Tennessee.

The fourth bill is brought by one Beal, who owns five bonds of the face value of $5,000, being $5,000 of the $54,150 of bonds outstanding in the hands of persons unknown covered by the concluding sub-section of paragraph eleven of the decree of February 27, 1897. After the entry of this decree, to wit, on March 26, 1897, Beal filed his intervening petition in the insolvency proceedings. This was allowed and referred to a master, who reported on July 12, 1897, that Beal owned the five bonds and that there was due thereon, on July 1, 1896, the sum of $5,881.25. Subsequently, to wit, on July 2, 1898, Beal procured an order to be entered allowing him to dismiss his intervening petition and withdraw his bonds.

It appears that on February 5, 1898, the Central Trust Company filed a motion in the consolidated causes " to discharge Receiver Hayward because the services of a receiver in these causes are no longer required, or (b) failing in this that said Central Trust Company be absolved from the costs of the receivership hereafter." This came on to be heard, and on April 11, 1898, in the order entered on this motion it is declared that there are still matters which require the services of a receiver ; that from and after the entry of the order in question the costs and expenses of the receivership shall in no event be taxed to the trust company or to its sureties, nor to the funds produced or realized from the mortgage property foreclosed therein ; the order then recites that the chief purpose in retain-

ing the receiver is for the enforcement of certain claims the proceeds of which will go to the general creditors, and as to which the trust company is charged with no duty; thereupon " it is ordered that the receiver continue the prosecution of said suits only in the event that creditors of the East Tennessee Land Company who are parties to these causes shall provide securities for the costs of such suits, including the expenses of the receiver and his counsel, for such sums and in such form and amount as the clerk of the court may deem adequate and satisfactory, and to be sufficient to protect the Central Trust Company from being charged or liable for any such expense from the date of the entry of this order. It is further ordered that the creditors so indemnifying the receivers, as aforesaid, and who shall elect to further continue the prosecution of said suits or actions, shall be entitled to the proceeds or benefits thereof to the extent of their respective claims and to the proceeds of all property and assets hereafter coming into the hands of said receiver to the exclusion of other creditors and persons who do not, within thirty days after notice to the solicitors for the respective parties of the entry of this order, join in providing security for the payment of further costs and expenses as hereinbefore required." On May 23, 1898, the Harriman Land Company claiming to be entitled by assignment to claims covered by the decree of February 27, 1897, to the amount of $1,224,397.80, filed its bond under this order. On June 24, 1898, it having been made to appear to the court that sufficient time had not been allowed to creditors residing at a distance, an order was made extending the time within which bonds could be filed for twenty days, and providing that if creditors filed their bonds within the twenty days they should have the same rights as those complying with the original order. Within the twenty days another creditor filed a bond. The suits in this Commonwealth against Leeson and Hopewell have been prosecuted by the receiver since then under these orders.

By the terms of the original order of April 11, 1898, any creditor who wished to participate in the prosecution of these suits had " thirty days after notice to the solicitors of the parties of the entry of this order " in which to make his election. Beal was then a party to the consolidated causes appearing there by

his solicitors Washburn, Pickle and Turner.    Moreover, when
Beal withdrew on July 2, 1898, the further time allowed for
electing to share or not to share in these suits had not expired.
Full opportunity was given to Beal to join in the prosecution
of them at a time when the outcome of them had not become
assured.    When the bills against Leeson and Hopewell were
filed in the Superior Court in this Commonwealth does not
appear; neither does it appear when they were heard in that
court.    They first came on for hearing in this court in Decem-
ber, 1899, and the decision reported in 176 Mass. 310, was ren-
dered June 15, 1900.    That opinion may be taken to have
brought those suits to a successful termination.    When Beal
filed the bill in equity now before us does not appear.    But it
was not sworn to until December, 1902, that is to say, nearly
three years after the suits against Leeson and Hopewell had be-
come a success.

The plaintiff Beal elected not to contribute to the prosecution
of these suits.    He allowed other creditors to contribute to the
expense of conducting them under an order that they should be
conducted for the benefit of the contributors.    He lay by for
nearly four years and a half after he elected not to contribute
to the prosecution of these suits, and for nearly three years after
these suits had been brought to a successful issue by the efforts
of those who did contribute.    He then undertook to step in and
appropriate to himself the fruits of the expenditures of those
who did contribute.    He has no standing in equity to maintain
such a bill.    He does not stand in the situation he would have
stood in had these suits against Leeson and Hopewell been con-
ducted at the expense of the company.    They were in fact con-
ducted by creditors and at the expense of creditors.    Under
these circumstances, Beal, who elected not to contribute to these
suits, must in equity yield to the prior rights of the creditors
who contributed to them and prosecuted them to a successful
termination.

It has been argued at length by the plaintiffs that the cred-
itor's bill in Tennessee was a fraud on the court.    In addition,
this court has been urged not to " permit the fund to be taken
from its jurisdiction without assurance that the interest of cred-
itors non-resident in Tennessee, and especially Massachusetts

citizens, will be fully protected, and it is submitted that upon the facts disclosed upon the record no such assurance can be given, but on the contrary it appears that the administration in Tennessee will deny all of these plaintiffs any share or participation in the fund," and they rely on what was said by this court in *Buswell* v. *Order of the Iron Hall,* 161 Mass. 224, 234–236, in support of that request.

The question in *Buswell* v. *Order of the Iron Hall* was whether this court should allow the Massachusetts assets collected by a Massachusetts receiver of an insolvent association which had its origin and principal place of business in Indiana, to be administered in Massachusetts for the benefit of Massachusetts creditors, or whether the court should direct those Massachusetts assets to be transmitted to the receiver in Indiana, to be administered there for the benefit of all creditors, including those who were citizens of Massachusetts. The investigation to be entered upon was an investigation as to the amount of the fund in the Indiana court, and the order of distribution adopted there. Without deciding that such an inquiry as was directed in that case could be made in such suits as those now before us, and that what was said there is applicable here, it is enough to dispose of the contention made here to say that there is nothing in the conduct of the case in the Circuit Court of the United States which raises a question as to these plaintiffs having justice done to them. It appears that the consolidated causes are still pending in the Circuit Court of the United States in Tennessee, and for that reason that court can deal more fully with the rights of all parties. Indeed no other court can deal so fully with the conflicting rights of all interested as that court, which has before it all the parties interested who choose to intervene. As to the contention, that that suit is a fraud on that court and has been used as an instrument of fraud in depriving these plaintiffs of their rights as creditors, it is enough to say that these bills are not, either with respect to the parties defendant or the allegations made, bills on which such a ground of suit can be pursued.

It appears that on February 2, 1903, an order was entered in these suits, appointing a receiver to collect any sums paid by Leeson and Hopewell in the two suits brought against them in

the name of the East Tennessee Land Company, to be held by him until the report in these suits had been heard by this court. The entry in each of these suits must be

> *The plaintiff is not entitled to maintain his bill.  Hayward, receiver, as against the plaintiff, is entitled to the fund in the hands of the receiver in this suit.  When the fund in the hands of the last named receiver has been disposed of, this bill is to be dismissed with costs.*

*J. Templeton,* (of Tennessee,) for the plaintiffs.

*W. H. Russell,* (of New York,) (*W. B. Winslow & L. G. Farmer* with him,) for the defendants.