McEWEN et al. v. HARRIMAN LAND CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1905.)

No. 1,367.

1. CORPORATIONS—INDEBTEDNESS—ASSIGNMENT—VALIDITY.

Where, pending proceedings in insolvency to settle the affairs of a corporation, a reorganization committee was organized to purchase certain of its property, and, in order to accomplish such result, a corporation was organized under an agreement that creditors of the insolvent corporation should be permitted to transfer to it claims against the old corporation in exchange for stock in the new, which, though authorized, did not use any of such indebtedness so transferred for the purchase of the property of the old corporation, a transfer of such indebtedness by the old creditors in exchange for stock did not constitute a payment of their indebtedness, but vested in the new corporation all the rights of such creditors as against the old corporation and its assets.

2. SAME—ASSIGNMENTS—VALIDITY—CHAMPERTY.

Where, after the assets of an insolvent corporation had been largely administered, leaving a large part of the indebtedness unpaid, the court authorized the receiver to continue certain suits against promoters to recover secret profits for the sole benefit of such creditors as were willing to execute bonds for costs and to indemnify the receiver, etc., against costs, expenses, etc., whereupon certain owners of indebtedness against the corporation assigned their claims under an agreement that the assignees should execute the indemnifying bonds for them in consideration of 30 per cent. of the sums received by the assignees on account of the proceedings—such assignments were not void for champerty.

3. SAME—CREDITORS' SUIT—PARTICIPATION.

Where, after partial administration of the assets of an insolvent corporation, the court ordered its receiver to bring suits against nonresident promoters to recover secret profits for the sole benefit of such creditors as should provide security for costs, including expenses of the receiver as counsel, etc., creditors who failed to join in the furnishing of such security, and made no effort to participate in the proceedings until it became evident that a large sum would be recovered therein, were not entitled to share in such fund.

4. SAME—SALE OF ASSETS—COLLATERAL ATTACK.

> Where, on the insolvency of a realty corporation, a reorganization agreement was entered into in which all creditors were entitled to participate, and a large part of the corporation's property was purchased at an upset price, fixed in the decree of sale, which sale was confirmed by the court, creditors who did not join in the reorganization were not entitled to collaterally attack the sale on the ground that the price paid was inadequate.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Leon Jourolmon and Jerome Templeton, for appellants.

Wm. Hepburn Russell, Wm. Beverly Winslow, and George W. Easley, for appellees Harriman Land Co. and others.

R. B. Cassell, for appellees Rodes and Hendricks.

Before LURTON and RICHARDS, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This is an appeal from a decree rendered in a case within another case. That case is this: Prior to November 18, 1893, the East Tennessee Land Company, a Tennessee corporation, organized in the year 1889, with its principal place of business at Harriman, in the Eastern District of that state, became insolvent. On that day six of its creditors, noncitizens of Tennessee, filed against it in the lower court a general creditors' bill. Two days later receivers were appointed to take charge of its assets. March 23, 1894, a bill to foreclose a mortgage upon a large quantity of real estate in five certain counties in said Eastern District, given by it August 28, 1891, to secure bonds to the amount of $1,000,000, was filed in said court by the Central Trust Company of New York, the trustee in the mortgage. On the same day the former suit was consolidated with the latter, and the receivership therein was extended thereto. Thereafter certain proceedings were had in said consolidated causes, and on February 27, 1897, a final decree was entered therein. By said decree the entire indebtedness proven against the corporation was adjudged. It consisted of said mortgage bonds, balances of purchase money due for certain portions of said real estate, secured by vendors' liens, most of which were superior to said mortgage, but some of which were inferior thereto, obligations secured by pledges of personal property, and obligations unsecured in any way. The indebtedness so adjudged exceeded the sum of $1,750,000. Some of it, however, was a duplication, owing to the fact that one kind of indebtedness, principally, if not entirely, said bonds, had been pledged as collateral security for other kinds thereof. In view of this it is difficult to state the exact amount of the real indebtedness of the corporation as thus adjudged, but this fact is not material to any question raised by this appeal. The decree further adjudged the liens upon the assets of the corporation and their priority, a sale of said assets, and a distribution of the proceeds thereof, after payment of the costs and expenses of the proceedings, in discharge of said liens to the extent thereof and in accordance with their priority. Under this decree a

sale was had on July 20, 1897, which was shortly thereafter duly confirmed. At said sale those portions of real estate covered by the vendors' liens which were superior to the mortgage were purchased by the holders of said liens at amounts considerably less than the balances due them, which were thus left unpaid to this extent. The rest of the real estate was purchased by Linus S. Freeman, James E. Rodes, and William Beverly Winslow as trustees for the parties to certain agreements by which funds were subscribed to pay the purchase price bid therefor. They purchased it for the sum of $70,000, the upset price named in the decree, which exceeded by the sum of $380 only the amount necessary to defray the costs and expenses of the litigation other than those incidental to the prosecution of the foreign suits hereinafter referred to. It does not appear what sums the personal assets pledged to secure certain obligations brought, but evidently they did not bring much. This exhaustion of the assets of the corporation left its indebtedness largely unpaid. With the sale of said assets and the distribution of their proceeds this much of the litigation spent its force. In the course, however, of the proceedings prior to the making of said decree, to wit, on May 22, 1895, an order was made directing the receivers to institute suits in the state of Massachusetts against Joseph R. Leeson and John Hopewell, Jr., residents of that state, and two out of sixteen individual promoters of said corporation, the East Tennessee Land Company, to recover secret profits made from said corporation at the time of its organization, which, if recovered, would constitute assets of the corporation for distribution in said consolidated causes upon its indebtedness. Pursuant to said order, in May, 1895, two separate suits against said individuals were brought in the state court of Massachusetts having original jurisdiction of them. December 19, 1895, an order was made in said consolidated causes directing a temporary suspension of the suits in Massachusetts until it should be ascertained that it was necessary to collect said assets to pay the indebtedness of the corporation. In June, 1897, this fact having been ascertained, and the receivership being represented by a single individual, the order of suspension was revoked, and the receiver was directed to proceed with said suits. On April 11, 1898, an order was made upon application of the Central Trust Company of New York, trustee under said mortgage, absolving it thereafter from any liability for costs of the receivership, and providing for the continued prosecution of said suits in the following words, to wit:

"It is ordered that the receiver continue the prosecution of said suits only in the event that creditors of the East Tennessee Land Company, who are parties to these causes, shall provide security for the costs of such suits, including the expenses of the receiver and his counsel, for such sums and in such form and amount as the clerk of this court may deem adequate and satisfactory, and to be sufficient to protect the Central Trust Company from being charged or liable for any such expenses from the date of the entry of this order. It is further ordered that the creditors so indemnifying the receiver as aforesaid, and who shall elect to further continue the prosecution of said suits or actions, shall be entitled to the proceeds or benefits thereof to the extent of their respective claims, and to the proceeds of all property and assets hereafter coming into the hands of said receiver, to the exclusion of

other creditors and persons who do not within 30 days after notice to the solicitors for the respective parties of the entry of this order join in providing security for the payment of further costs and expenses as hereinafter required."

June 24, 1898, the time within which indemnifying bonds might be given under said order, was extended 20 days thereafter. Under these orders the Harriman Land Company, a New Jersey corporation, organized in 1897, and, claiming to be the assignee of the bulk of the creditors of said East Tennessee Land Company, whose claims against it had been proven in said consolidated causes, and adjudged by the decree of February 27, 1897, J. E. Rodes, assignee of one of such creditors, and Claude E. Hendricks, assignee of four or five of such creditors, executed bonds as required by said order. No other such creditor or assignee thereof executed any bond in compliance therewith. Thereafter the receiver, at considerable cost and expense to said indemnifiers, prosecuted said suits against said Leeson and Hopewell to a successful determination, and recovered from them for distribution in said consolidated causes as a part of the assets of said insolvent corporation the sum of $89,173.26, which is now held by him for such purpose. The proceedings had in said suits and the basis of the recovery therein are fully set forth in the following reported decisions of the Supreme Court of Massachusetts, to which said suits were carried by said Leeson and Hopewell on four separate occasions, to wit: Hayward v. Leeson, 176 Mass. 310, 57 N. E. 656, 49 L. R. A. 725; East Tennessee Land Co. v. Leeson, 178 Mass. 206, 59 N. E. 639; Same v. Same, 183 Mass. 37, 66 N. E. 427; Same v. Same, 185 Mass. 4, 69 N. E. 351. This, then, is the case within which is the case in which the decree appealed from was rendered.

The case that is within said other case in which the decree appealed from was rendered is this: On the 3d of February, 1903, the suits in Massachusetts had progressed so far that a recovery was absolutely certain, and the amount of recovery was reasonably certain; but before the defendants therein had made any payment on account of said liability and the receiver had any moneys in hand arising therefrom, an intervening petition was filed in said consolidated causes by John T. McEwen, executor of William S. McEwen et al., six creditors of said insolvent corporation, whose claims against it were on account of balances of purchase money due them for real estate sold said corporation, to secure which they held vendors' liens superior to said mortgage, whose claims had been proven and adjudged by said decree of February 27, 1897, and who had purchased at the sale thereunder said real estate at sums less than the balances due them, respectively, against said Harriman Land Company, J. E. Rodes, and Claude E. Hendricks, the only parties who had executed indemnifying bonds under said order of April 11, 1898, in which, for the reasons therein stated, they sought to have it adjudged that said defendants thereto were not creditors of said East Tennessee Land Company, and had no right to share in said fund about to be recovered by the receiver; and that same, after paying costs and expenses, should be distrib-

uted amongst the petitioners and all other creditors of said corporation whose claims were unpaid. On March 28, 1904, four other parties claiming to be unpaid creditors of said corporation, to wit, Nathaniel W. Myrick, Byron A. Beal, Charles Gerding, Jr., and D. A. Mowry's personal representative, were permitted to file an intervening petition against the defendants to the former petition, in which they prayed the benefits thereof and the same relief as therein prayed. It is conceded that Myrick and Beal are creditors, each holding bonds for which judgment was taken on their behalf by said trustee in said decree, neither having proved their bonds therein, Myrick, however, having proved certain coupons for interest on said bonds. It is denied that Mowry and Gerding are creditors. It is conceded that Mowry held bonds at one time which were proven in said causes on his behalf by one Schumacker, but it is claimed that this indebtedness was assigned to the Harriman Land Company, one of the defendants to said intervening petition. It is conceded that Meisner, of whom Gerding claimed to be assignee, held the obligations of the said insolvent corporation for a balance of purchase money due for real estate conveyed to it, but it is claimed that the title to sufficient of the real estate conveyed to cover said balance had proven defective, and provision had been made in the decree for an abatement therefrom to the extent the title was defective.

The decree rendered in the case made by these two intervening petitions from which this appeal has been taken by said petitioners was a dismissal of said petitions with full prejudice, thus denying to them any right to participate in said fund of about $90,000. No other judgment has been rendered in relation to said fund.

Counsel for the parties to the appeal have discussed two questions and presented them for determination by this court. One is whether the appellees, the Harriman Land Company, J. E. Rodes, and Claude E. Hendricks, are creditors of the East Tennessee Land Company, and entitled to share in the distribution of said fund. The other is whether the appellants, the petitioners in said intervening petitions, and creditors of said insolvent corporation, are entitled to share in said distribution. Our conclusion is that the latter are not entitled to share therein, and that the former are entitled to the whole of the fund. In order to understand appellants' position as to the first of these two questions, and the grounds of our disposition of it, a further statement of fact is essential. The way in which the appellee the Harriman Land Company claimed to have become the owner by assignment of the indebtedness which it asserted is this: Pending said consolidated causes, and some time prior to said decree of February 27, 1897, the bulk of the creditors and stockholders of the East Tennessee Land Company entered into a written agreement with each other, which they characterize therein as an agreement for the reorganization of said company, whereby it was provided, in substance, that a new corporation should be organized to purchase at the sale to be had under the decree in said causes so much of the properties of said company as it was deemed advisable to purchase; that the parties thereto

138 F.—51

should receive from said corporation stock therein, which was to be divided into three distinct classes, with an order of preference, in exchange for their indebtedness against and stock in said company, the indebtedness to be exchanged for stock of the highest rank and the stock for that of the lower rank, with an assessment and each dollar for dollar; that other stock of the corporation of the highest rank should be sold for cash; that other indebtedness, whose owners did not enter into the agreement, might be purchased for cash, power to borrow which for that purpose was given; and that 17 named individuals, creditors and stockholders of said company, should be a committee, characterized as a "reorganization committee," to carry the provisions of said agreement into effect. All creditors and stockholders of said company were given an opportunity to become parties to this agreement. Through the instrumentality of said reorganization committee, and under the provisions of said agreement, the appellee Harriman Land Company was organized in July, 1896. At the time of the sale in July, 1897, neither the reorganization committee nor the Harriman Land Company possessed sufficient funds with which to purchase the properties of the East Tennessee Land Company. In this contingency, in the early part of that month the agreement hereinbefore referred to was entered into by which sufficient funds were subscribed to purchase the real estate of said company not covered by prior vendor liens at the upset price named in the decree of sale, to wit, $70,-000, and said Freeman, Rodes, and Winslow were designated as trustees to make the purchase on behalf of the parties thereto, collect the moneys subscribed, and pay the purchase price. Many, if not most, of the parties to these agreements were parties to the reorganization agreement; and Freeman and Winslow, two of the trustees thereunder, were not only parties thereto, but members of the reorganization committee. It would seem that these agreements were entered into at the instance and by the procurement of said reorganization committee. But whether so or not, at any rate there was an understanding with said reorganization committee that it, on behalf of the parties to the reorganization agreement, should have the benefit of the purchase of said real estate by said trustees upon reimbursing their beneficiaries for the moneys expended in purchasing same and interest thereon. So that, though the reorganization committee did not actually purchase said real estate at said sale, yet on the behalf aforesaid it had an equitable interest in the purchase, and upon making said reimbursement had a right to enforce a transfer of the bid to it. It was the real purchaser, and said trustees only had a lien on the property for reimbursement. This much is said in view of the emphasis placed by appellees' solicitors upon the circumstance that the trustees, and not the reorganization committee, were the purchasers at the sale. It cuts no figure in the disposition of the question under consideration. After the sale, to wit, September 1, 1897, the reorganization committee was in condition to take over the real estate so purchased by said trustees, and thereupon they and said committee transferred and conveyed same to the appellee Harriman Land

Company, to whom a deed was subsequently made by the court, and the creditors and stockholders, parties to said reorganization agreement, through said reorganization committee, and an attorney in fact and a trustee as to certain of them, transferred and assigned the entire indebtedness and stock represented by said parties to the appellee Harriman Land Company, and received from said company its stock in exchange therefor in accordance with the terms of said reorganization agreement. It is through this reorganization agreement and its execution that the appellee Harriman Land Company asserted title to most of the indebtedness of said East Tennessee Land Company claimed by it. In addition thereto, it asserted title to an indebtedness in favor of the Coal Creek Mining & Manufacturing Company for a balance of $51,353.-90 on account of purchase money for land sold the East Tennessee Land Company after crediting thereon the proceeds of the sale of said land in enforcement of its vendor's lien under said decree, and also to an indebtedness in favor of Mason, Gillingham, and Crab Orchard Coal Company for a balance of $18,375 on like account, which it claimed to have acquired by virtue of an agreement of date February 16, 1897, between said reorganization committee and said first-named company, and an agreement of date February 19, 1897, between said committee and said last-named creditors, providing for an assignment thereof to the appellee Harriman Land Company in exchange for certain of its securities, and execution thereof.

The way in which the appellees J. E. Rodes and Claude E. Hendricks claimed to be the owners by assignment of the indebtedness asserted by them, respectively, is this: R. B. Cassell was the attorney of the assignors in the assignments under which said Rodes and Hendricks claimed. At his instance the assignments were made under an agreement that the assignees were to execute indemnifying bonds under the order of April 11, 1898, on behalf of the claims assigned, and pay the assignees 30 per cent. of the sums received on account of same.

Now, the main attack of the appellants is upon the appellee the Harriman Land Company's claim that it is a creditor of the East Tennessee Land Company as to the indebtedness covered by the reorganization agreement. They maintain that the effect of that agreement and its being carried into effect by the issuance of said stock in exchange for said indebtedness was a satisfaction and payment thereof, so that after its execution said indebtedness no longer had any existence, and at the time of the giving of the indemnifying bond on April 11, 1898, the appellee was not a creditor of the East Tennessee Land Company as to same. It is difficult to see what possible room there is for this contention. The agreement in relation to this indebtedness was simply to exchange it for the stock of the new corporation that was to be formed under its provisions; i. e., to assign and transfer it to such corporation in consideration for said stock. By section 7 of the agreement it was provided that:

"The stock of the new corporation of the several classes indicated shall be issued to holders of the bonds, stocks, and securities of the present East

Tennessee Land Company in exchange for such bonds, stocks, and securities only upon the conditions and limitations hereinbefore stated."

By section 8 provision was made for holders of vendors' liens receiving first lien preferred stock of the new corporation "in exchange for their lien claims." By section 9 provision was made that a holder of an unsecured claim, whose status was such as, in the opinion of the committee, to justify it, should be "allowed to exchange his claim for second preferred stock of the new corporation without cash payment," and that the holders of unsecured claims whose status was not such should, "upon subscription and payment for such amount of first lien preferred stock of the new corporations as seems fair," be "permitted to exchange their claims or such amount thereof as may be agreed upon in the particular case for the second preferred stock of the new corporation." Likewise, the carrying into effect this agreement was simply an exchange of the indebtedness covered by it for stock of the appellee Harriman Land Company; i. e., a transfer and assignment thereof to said company in consideration for its stock. The transaction was as much a transfer and assignment of said indebtedness to said company as the transactions with the Coal Creek Mining & Manufacturing Company and Mason et al., who were no parties to said agreement, were transfers and assignments to said company of the claims held by those parties, or as if said committee under the authority of section 11 of the reorganization agreement had purchased indebtedness of the East Tennessee Land Company from persons not parties to said agreement, and paid for same with money borrowed for that purpose, the transfer and assignment of such indebtedness to appellee would have been in reality what it purported to be, and have kept the indebtedness alive in the hands of appellee. A transfer and assignment of indebtedness from one person to another for a given consideration is never a payment of such indebtedness. The indebtedness is kept alive, and passed from the assignor to the assignee. This is elementary. The only possible question that could be made as to the reorganization agreement and its being carried into effect in accordance with its provisions would be as to whether the parties to said agreement paid value for the stock of the appellee; but that is a question which cannot be raised by the East Tennessee Land Company or any creditor of such company.

But counsel for appellants argue that their position finds support in the cases of Central Trust Co. v. Cincinnati, J. & M. Ry. Co. (C. C.) 58 Fed. 500; First Nat. Bank v. Radford Trust Co., 80 Fed. 569, 26 C. C. A. 1. The facts of the Central Trust Company Case were these: The Cincinnati, Jackson & Michigan Railway Company owned a railroad in two divisions. One division was known as the "Jackson Division"; the other as the "Van Wert Division." The latter by itself was subject to two mortgages—one to secure $1,150,000 of ordinary bonds, the other to secure $363,000 of income bonds. Both divisions were subject to a mortgage to secure more than $2,000,000 of ordinary bonds. As to the Van Wert Division, the mortgages covering it alone were prior to the

mortgage covering both divisions. As to the Jackson Division, there was nothing ahead of the latter mortgage. There was a small amount of floating indebtedness. There was a personal liability on the part of the company for the indebtedness covered by all the mortgages. That covered by the mortgages on the Van Wert Division was not an original liability, but one by assumption only. In this condition of things, all the stockholders and all the bondholders, save those holding $211,000 of the income bonds, entered into an agreement to this effect: Proceedings should be instituted to foreclose the mortgages and sell both divisions. A corporation should be formed to purchase them at the foreclosure sale. Each stockholder of the old corporation should receive on account of his stock therein an equal amount of stock of the new corporation, paying a certain assessment. Each income bondholder should receive on account of bonds an equal amount of stock of the new corporation without paying any assessment; and each ordinary bondholder, whether his bonds were secured by the mortgages on the Van Wert Division alone or by the mortgage on both divisions, should receive on account of his bonds an equal amount of the bonds of the new corporation. A committee was appointed to carry the agreement into effect, and it was given all powers to enable it to do so. In accordance with the agreement, foreclosure proceedings were instituted, and the property sold under a decree of foreclosure. It was purchased by the committee. A new corporation was formed, to whom it was conveyed; and the parties to the agreement received stock or bonds of the new corporation as provided in the agreement. Each bondholder whose bonds were secured by a mortgage on the Van Wert Division received a like amount of bonds of the new corporation, and so did each bondholder whose bonds were secured by a mortgage on both divisions. Though there was a distinction between these two classes of bondholders under the old régime, there was no distinction between them under the new. At the foreclosure sale, the Van Wert Division was purchased by the reorganization committee for $150,000 and the Jackson Division for $2,525,000, which was $125,000 in excess of the bonds secured by the mortgage on both divisions. The reorganization committee used $150,000 of the Van Wert bonds in paying for the Van Wert Division, and the entire bonds covering both divisions in paying all but $125,000 of the purchase price for the Jackson Division. This left $1,000,000 of the Van Wert bonds unused, and there was on hand for distribution by the court the $125,000 realized from the Jackson Division in excess of the bonds on it alone. A controversy arose between the reorganization committee and the holders of the floating indebtedness of the old corporation as to whether the holders of the $1,000,000 of unused Van Wert bonds had a right to share in the distribution of said surplus of $125,000. It was held by Judge Taft that they had not. This case, however, does not support the contention of appellant's counsel in this case. There is a wide distinction between that case and this. The key to the distinction between them lies in the fact stated above that the right to share in the distribution of said sur-

plus on account of said bonds was asserted by the reorganization committee on behalf of the original holders of the Van Wert bonds. It was not asserted by the new corporation organized by the reorganization committee in pursuance to said agreement. Here the right to share in the Leeson-Hopewell fund, so far as the indebtedness covered by the reorganization agreement is concerned, is not asserted by or on behalf of the original holders of that indebtedness, but by the appellee Harriman Land Company. It asserts such right on the ground that it was provided by the reorganization agreement that the indebtedness of the old corporation held by the parties thereto should be exchanged for securities of the new corporation to be formed under the agreement—i. e., transferred and assigned to said corporation in consideration of receiving its securities as provided in the agreement—and that thereafter and before the execution of the indemnifying bond under the order of April 11, 1898, the exchange, transfer, and assignment was carried into execution. Such was the true intent and meaning of the agreement, and it is not capable of any other construction. In the Central Trust Company Case it was not even asserted by anybody that any exchange of the bonds of the old corporation for those of the new—i. e., a transfer and assignment of said bonds to the new corporation in consideration of receiving the bonds of the new—was contemplated by the agreement entered into, or had ever been made. The sole controversy was as to whether the unused Van Wert bonds, after the carrying of the reorganization agreement into effect, had any further life in them in the hands of the reorganization committee on behalf of the original holders thereof. It was held that they had not. It was so held because the reorganization agreement was construed to mean that upon the execution thereof all the bonded indebtedness held by the parties thereto should be treated as paid, extinguished, or fully satisfied. This construction was enforced by two considerations. One was this: Each Van Wert bondholder had received a like amount of the bonds of the new corporation on account of his Van Wert bonds, and each Jackson and Van Wert bondholder had received as much, and no more. If the position put forward on behalf of the Van Wert bondholders were correct, then simply because the reorganization committee had failed to make the Van Wert Division bring more than $150,-000, the Van Wert bondholders would be permitted to share in the surplus of the Jackson Division, and the Jackson and Van Wert bondholders would not; and so it would be that the former would "obtain greater benefit from the foreclosure and sale and the reorganization agreement than the Jackson Division first mortgage bondholders, whose security sold for more than their mortgaged bonds." Both sets of bondholders were parties to the reorganization agreement. Judge Taft said: "Plainly the parties to the agreement intended no such paradoxical result." The other consideration was this: All the stockholders and all the ordinary bondholders were parties to the reorganization agreement. As matters stood when the agreement was entered into, the stockholders were individually liable to said bondholders in case there should

be a deficiency after the sale of the mortgage property. If, then, it was not the true meaning of that agreement that the indebtedness held by the bondholders should be considered as fully satisfied upon the execution thereof, the holders of the unused Van Wert bonds had a right to assert this individual liability against their associates in the agreement, to wit, the stockholders, to the extent of said bonds. Judge Taft said:

"Can the Van Wert bondholders, or the committee of reorganization for them, enforce this liability? It is conceded by counsel for the committee that they cannot. If not, why not? The only reason is that the bondholders under the agreement have impliedly agreed with the stockholders that the new securities which they have received extinguished their debt."

Such being the proper construction of the agreement, the only other question in that case was as to whether the old corporation or its floating creditors, who were not parties to the reorganization agreement, could claim the benefit of its provisions. It was held that they could; that it was a case where two parties to a contract had stipulated for the benefit of a third person, a stranger to the contract; and that such third person had a right to assert the benefit arising thereby to him. Under the reorganization agreement in this case the only possible contingency in which the indebtedness represented by the parties thereto, or any part thereof, could have been treated as paid and satisfied would have been had the reorganization committee found it necessary to use it in payment of the purchase price for the property which it had power to do, and so used it. But that contingency never arose. The property sold for cash. The cash was paid. No part of said indebtedness was ever used in paying for the property. There was no occasion to use it. Not having occasion to so use it, it was transferred and assigned to the appellee the Harriman Land Company in accordance with the provisions of the agreement, and thus kept alive as an indebtedness of the East Tennessee Land Company.

Then as to the Radford Trust Company Case. There the property of an old corporation was transferred to a new corporation in consideration of its assumption of the liabilities of the old. The property in the hands of the old corporation was subject to a mortgage to secure a certain quantity of bonds. The new corporation made a mortgage to secure a new set of bonds. Some of the holders of the old bonds accepted the new bonds in substitution for the old. Other of the holders of the old bonds did not. It was held that the former, by their acceptance of the new bonds for the old bonds, had released the old security; and the latter, by their nonacceptance thereof, retained their old security, and had a lien on the mortgaged property to secure their old bonds, which was prior to that held by the former to secure their new bonds. It was precisely the same as if there had been no new corporation in the transaction, and the old corporation had executed the new bonds and mortgage to secure same. Judge Lurton said:

"The election to hold and rely upon the bonds of the Hughes Bros. Manufacturing Company as a substitute for the bonds of the Hughes Lumber Company operated as a payment of the latter bonds and a release of the security

provided by the Barton mortgage. Central Trust Co. v. Cincinnati, J. & M. Ry. Co. (C. C.) 58 Fed. 500. The case of Robb v. Voss, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52, is a case where, under circumstances of much greater hardship, a party was held to the consequences of an election. The principles upon which that case rests are those which govern this. Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 435-470, 6 Sup. Ct. 809, 29 L. Ed. 963, also presents a case of the acceptance of bonds secured under a junior mortgage in substitution for bonds issued under an earlier mortgage, where the court held that acceptance worked a cancellation of the earlier mortgage and held the parties to their agreement."

That, therefore, was another case where the securities of the new corporation were accepted in payment and satisfaction of the securities of the old. It was not a case, as here, of exchanging the one for the other—transferring and assigning the one in consideration of receiving the other.

An instance where a reorganization agreement contemplated the indebtedness of the old corporation being kept alive and being sold or given in exchange for securities of the new corporation may be found in the case of Columbus S. & H. R. R. Co. Appeals, 109 Fed. 177, 48 C. C. A. 275, decided by this court.

Such, then, is appellants' position as to the appellee Harriman Land Company being a creditor of the East Tennessee Land Company to the extent of the indebtedness covered by the reorganization agreement and the reasons for our conclusion that it was. As to the claims asserted by it as assignee of the Coal Creek Mining & Manufacturing Company and Mason et al., there would seem to be no possible reason for holding that it did not acquire such claims by assignment from said parties, and by virtue thereof is a creditor of said company to the extent of said claims. The suggestion is made that the purchase was made so as to prevent said creditors from competing with the reorganization committee at the sale that was to be had under the decree to be entered in said causes. We know of no law preventing one creditor from purchasing the indebtedness of another creditor to get him out of the way. It is a matter solely between the two creditors, and, if one is willing to sell to the other, no one else can complain.

Then as to the status of the appellees Rodes and Hendricks. The suggestion is made that the transactions by which the claims asserted by them were assigned to them were champertous and void. We do not so regard them. We concur in the opinion of Judge Wanty, who rendered the decree appealed from, that they were "legitimate transactions."

It remains to state the ground of our position in regard to the second question presented for our determination on this appeal. We hold that the appellants, though creditors of the East Tennessee Land Company, are not entitled to share in the Leeson and Hopewell fund, because of their failure to comply with the order of April 11, 1898, and execute a bond to indemnify the receiver for all costs and expenses to be incurred in the prosecution of the suits against said individuals. It was expressly provided by that order that the creditors who should indemnify the receiver and elect to further continue the prosecution of said suits should be entitled to

the proceeds or benefits thereof to the extent of their respective claims to the exclusion of other creditors who did not so act. All of the appellants were at that time parties to said consolidated causes, had notice of the making of said order, and failed to comply with its terms. Their failure so to do cut them off from all right to share in said fund. Said order is a barrier in the way of such right, and it would be inequitable to permit them to stand by and see others execute the bonds and incur the expense involved, and then come in and share in the result. Our view of this matter cannot be better expressed than in the language of Judge Wanty in the opinion before referred to. In alluding to the appellants he said:

"They did not see fit to contribute to the expense of the litigation until it had been carried by the receiver for the benefit of the contributors to a successful termination, and then they awoke from their sleep with outstretched hands to receive the fruits of a contest that they declined to make. These suits against Leeson and Hopewell were prosecuted by the parties giving the bonds for their own benefit, and not for the benefit of these petitioners. Had no bonds been given under the order of April 11, 1898, the suits would have been abandoned, and there would have been no money for distribution. Now that the fund has been secured, after due notice to these petitioners that they must bear their share of the burden if they desire to share the fruits of the contest, they have no standing in a court of equity to claim this fund and exclude the parties who, under the order of the court, are entitled to it."

After it became a certainty that there would be a recovery in these suits, each of the four appellants, to wit, Myrick, Beal, Gerding, and Mowry, parties to the second intervening petitions filed in the lower court, brought a suit in the proper court in Massachusetts, in which he sought to equitably attach the funds due to the East Tennessee Land Company from Leeson and Hopewell and have them applied in payment of his debt. These suits were defended by the receiver on behalf of the company, and it was held that the plaintiffs therein were not entitled to any such relief. Gerding v. East Tennessee Land Co., 185 Mass. 380, 70 N. E. 206. The ground upon which it was held that all of said appellants except Beal were not entitled to the relief sought was that each of them had voluntarily become a party to the insolvent proceedings in the lower court, and had thereby elected to take advantage of and become bound by those proceedings, and could not thereafter resort to remedies against the property of the insolvent company in other states to which otherwise he would have a right of recourse. Beal, though he had become a party to said proceedings, and was such at the time of the making of the order of April 11, 1898, had thereafter been permitted to withdraw therefrom; so that at the time of filing his bill of equitable attachment he was not a party to said proceedings. The ground, therefore, upon which he was denied the relief which he sought, was said order of April 11, 1898, and his failure to comply therewith. Judge Loring, in the course of his opinion in the case last cited, said:

"The plaintiff Beal elected not to contribute to the prosecution of these suits. He allowed other creditors to contribute to the expense of conducting them under an order that they should be conducted for the benefit of the contributors. He lay by for nearly four years and a half after he elected not to contribute to the prosecution of these suits, until they had been brought to

a successful issue by the efforts of those who did contribute. He then under-
took to step in and appropriate to himself the fruits of the expenditures of
those who did contribute. He has no standing in equity to maintain such a
bill. He does not stand in the situation he would have stood in had these
suits against Leeson and Hopewell been conducted at the expense of the com-
pany. They were in fact conducted by the creditors, and at the expense of
the creditors. Under these circumstances, Beal, who elected not to contribute
to these suits, must in equity yield to the prior rights of the creditors who
contributed to them and prosecuted them to a successful termination."

What is said here of Beal is true of all the other appellants, and
is sufficient not only to bar them all from a right to exclude appel-
lees from sharing in said funds until their claims were satisfied,
but also from any right to share with appellees in the distribution
thereof.

Here this opinion might well terminate, but in view of the em-
phasis placed by appellants' solicitors upon two considerations,
which really have no higher dignity than makeweights, some ref-
erence should be made to them. One of them amounts to this, to
wit, the prominent position taken in the institution and prosecu-
tion of the proceedings in the lower court to wind up the affairs of
the East Tennessee Land Company, and to bring about the making
of the reorganization agreement and its carrying into effect by cer-
tain of said individual promoters of said company, who, like Leeson
and Hopewell, had made secret profits to a like extent at its organ-
ization, and the prominent positions they now hold in the appellee
the Harriman Land Company, which will reap the principal bene-
fits from the Leeson and Hopewell fund. The claim is put forward
that everything that has been done along this line was for the pur-
pose of shielding said promoters, and making it so that they would
not have to account to said company like Leeson and Hopewell.
It is thought to be inequitable that said promoters should thus be
allowed to shield themselves and then participate in the distribution
of said fund. This consideration is not thus put forward by ap-
pellants' solicitors, but such we conceive it to be in effect. The
record, as we read it, does not bear out this contention as to the
purpose of said proceedings, reorganization agreement, and its ex-
ecution. No doubt, there was no great desire on the part of said
promoters to account for said secret profits, but the purpose of said
cause of action was not to prevent their accounting therefor. Said
proceedings, on the contrary, afforded an opportunity of making
them account. Possibly the receivers first appointed were friendly
to them, but they were subsequently removed, and receivers were
appointed in no way connected with them. These receivers, at
about the same time the suits against Leeson and Hopewell were
instituted, filed a dependent bill in the lower court against said pro-
moters, by which they sought to make them account for said secret
profits. Some of them were insolvent and others nonresidents of
Tennessee, and not properly suable in the lower court. Thereafter
that litigation was settled by certain of the promoters so sued can-
celing certain indebtedness on the part of the East Tennessee Land
Company, which settlement was approved by the court and by all
the parties to the consolidated causes and their counsel, and a de-

cree was entered accordingly. In so far as any creditor was persuaded by said promoters not to take any steps to make them account for secret profits, or to consent to or acquiesce in said settlement, he alone can complain of such persuasion, and he can complain only in the event he was overreached. None of the appellants claim to have been persuaded by said promoters to acquiesce in said settlement, much less to have been overreached by them. And if for any reason they are not bound thereby, this fact is no ground for the appellees being denied the Leeson and Hopewell fund. The sole effect of it is to put them in position to take steps yet to make said promoters account according to law, if their right so to do is not now barred by the statute of limitation.

The other consideration is that the reorganization committee and the appellee Harriman Land Company was enabled to acquire all the real estate of the East Tennessee Land Company not covered by prior vendor liens at the sum of $70,000, which was greatly less than its real value. So far as McEwen et al., the creditors in first intervening petition, are concerned, they were not hurt by this fact. They had no right to participate in the proceeds of this real estate until the mortgage indebtedness, which amounted to over $1,000,-000, was paid. Besides, all creditors were given an opportunity to enter into the reorganization agreement according to their respective rights, and those who lost anything by not doing so have themselves only to blame. And, finally, said sale was duly reported to the court, and has been duly confirmed. It cannot now be questioned collaterally.

Counsel have also discussed whether the appellant Mowry's personal representative and Gerding are creditors of the East Tennessee Land Company, but, in view of our holding that no creditor of said company outside of appellees is entitled to any interest in the fund in question, it is not essential that these questions should be disposed of.

The decree appealed from is affirmed.