CORNELL v. NICHOLS & LANGWORTHY MACH. CO.

(Circuit Court of Appeals. Second Circuit. December 9, 1912.)

No. 26.

1. RECEIVERS (§ 152*)—INSOLVENCY—PROCEEDS OF CHOSES IN ACTION—RIGHT
   TO DISTRIBUTION—LIMITATION—JURISDICTION.
      Certain foreign insurance companies, having issued policies on property of insolvent, denied liability. A receiver had no funds with which to litigate the question, and to do so would be compelled to deposit $3,500 in England to begin and maintain litigation there. *Held,* that the court had power to direct that only such creditors as would come in and contribute to the fund should participate in any recovery secured from such policies.
      [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

2. RECEIVERS (§ 152*)—SPECIAL FUND.
      Where foreign insurance companies holding policies on property of the insolvent denied liability, and in order to enable the receiver to enforce the policies an order was passed that only such creditors as contributed to a fund required to prosecute such litigation should share in the proceeds, the general creditors could only share in the amount received from such foreign insurance in the event the amount was in excess of the claims of the contributing creditors, and then only to the extent of the surplus.
      [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

3. RECEIVERS (§ 200*)—COMMISSIONS—EXPENSE OF ADMINISTRATION—SERV-
   ICES—SPECIAL FUND.
      Where a special fund was created by litigation against foreign insurance companies, which the receiver was only enabled to maintain by contributions from creditors under an order limiting participation in the fund to the contributing creditors, the receiver could not charge the general expense of administration on such special fund; nor was he entitled to commissions, except on so much of it as remained after the claims of the contributing creditors had been satisfied, but was only entitled to an allowance therefrom for the reasonable value of his services in conducting the litigation.
      [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 397–399, 401; Dec. Dig. § 200.*]

4. RECEIVERS (§ 152*)—ASSETS—DISTRIBUTION—PROCEEDS OF INSURANCE.
      Where an insolvent covenanted with a trust company which had floated the insolvent's bonds that it would keep its property fully insured to an amount at least equal to the amount of bonds outstanding, and that all policies of insurance issued on the property should be payable to the

trust company, the bondholders had a first lien on the proceeds of policies issued under such provision.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Action by Charles G. Cornell, Jr., against the Nichols & Langworthy Machine Company. Proceedings for the distribution of certain funds derived from policies of insurance on defendant's plant, claimed, respectively, by Charles G. Cornell, Jr., the Industrial Trust Company, John K. Hayward, and William Beverly Winslow. From decrees of distribution, Cornell, Hayward, and Winslow appeal. Affirmed.

Cyrus M. Van Slyck, of Providence, R. I., and Wing & Russell, of New York City, for Industrial Trust Co.

Charles W. Lucas and William Ferguson, both of New York City, for Hayward.

Gilbert E. Roe, of New York City, for Cornell and Winslow.

Murray, Prentice & Howland, Charles P. Howland, and Otto V. Schrenk, all of New York City, for receiver.

Briesen & Knauth, Charles P. Howland, and Otto V. Schrenk, all of New York City, for Knauth, Nachod & Kuhne.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The Nichols & Langworthy Machine Company was, at the time covered by this litigation, a Rhode Island corporation located and doing business at Hope Valley, in that state. On April 13, 1909, a large part of its plant was destroyed by fire. On that day the property was covered by insurance in foreign and domestic companies in about the sum of $330,000, the greater part of which—about $300,000—was in English companies, which denied their liability under the policies and refused to pay the same. The remainder, about $30,000 was in American companies or companies duly authorized and actually doing business in the United States.

After the fire the Machine Company became insolvent and numerous suits were commenced against it, making it impossible for the company to continue to transact business. In those circumstances, on July 15, 1909, Charles G. Cornell, Jr., a judgment creditor, commenced an action in the Circuit Court for the Southern District of New York asking for an injunction restraining the removal of the property from the jurisdiction of that court, and that the insurance companies within that jurisdiction be enjoined from paying over the amount due on said policies to any person other than the receiver appointed by that court. The bill prayed for other appropriate relief. The defendant having appeared and answered admitting all the material allegations of the bill, the court, on July 16, 1909, appointed William B. Winslow as receiver, and, on the same day, the Machine Company transferred to him all its personal property, including the policies of insurance, both domestic and foreign. Subsequently and on January 18, 1910, with the

approval of the court, the claims against the domestic insurance companies were settled, and, as a result, $10,302.90 was paid into the First National Bank, to be there held until it was judicially determined to whom the said sum should be paid. The fund is claimed by Winslow, as receiver, and, in his individual capacity he insists that he should be paid $5,000 therefrom for legal services rendered for the Machine Company prior to the date of the receivership. It is also asserted by John K. Hayward that long prior to the receiver's title to the policy issued by the Sun Insurance Company, the said policy, and said loss, damage or claim due or to become due thereunder, were, on the 15th day of May, 1909, transferred by the Machine Company to the Carnegie Trust Company as security for a loan made by the said Trust Company to the Machine Company and to secure a certain promissory note given for said indebtedness, which note was, before maturity, and on the 30th of June, 1909, assigned to the said Hayward, at which time there was due on the said note the sum of $6,430.19. Hayward insists that he has a first lien upon the amount paid by the Sun Company on January 18, 1910, to the First National Bank, to wit, the sum of $5,-151.45. The court, on September 27, 1911, entered a decree awarding the entire fund in the First National Bank to the Industrial Trust Company, trustee under the mortgage executed by the Machine Company, April 1, 1906.

Cornell assigns error in awarding the entire fund to the Industrial Company and in refusing to allow his disbursements, costs and counsel fees to be paid from said sum.

Hayward assigns error in that the court did not award the sum of $6,431 to him instead of the Industrial Trust Company.

Winslow assigns as error the ruling of the court, refusing to award him counsel fees for legal services rendered by him to the Machine Company prior to the receivership and refusing to give him an attorney's lien upon the fund disposed of by the decree.

Regarding the English companies, it appears that all of them denied liability and that it was necessary to deposit in England a fund, amounting to about $3,500, in order to begin and maintain the litigation there.

In these circumstances the receiver, after notice to all the creditors whose names and addresses could be obtained, applied for and obtained an order permitting him to continue the litigation only in event that the creditors advance the necessary money to provide for the costs, expenses and counsel fees in the suits. The order provided further that, in the event that such sum is advanced, only such creditors as have contributed to the fund shall be permitted to share in the recovery. Due notice of this proceeding and order was given to all the creditors.

The court decided that those who had not contributed should not share in the recovery. The power of the court to make this order is challenged by the necessary assignments of error.

The questions presented for review relate to the distribution of the two funds arising, respectively, from the foreign and domestic insurance.

[1] Regarding the foreign insurance, the question turns upon the power of the court to make the order limiting the distribution to those

creditors who had contributed to the creation of the fund. We think the action of the court in this regard was proper and should be sustained.

The situation as to the foreign policies was desperate; the companies had denied all liability, there was grave doubt whether the policies could be enforced. The suits in England could not be prosecuted unless $3,500 was advanced as security for costs and disbursements. The receiver had no money with which to prosecute these claims. The only hope to secure any part thereof depended upon the action of the creditors, unless they contributed, the suits must be dropped. All had a right to contribute and, by doing so, to share in the recovery. We think it eminently proper that those who advanced the money which made the recovery possible should alone share in the fund. To put these creditors on a par with those who, with full notice of the situation, refused to contribute a dollar to create the fund, would, in our judgment, be most unfair.

The Trust Company insists that after paying the disbursements made by the receiver and after repaying to the contributors the amount paid by each, the entire fund remaining should be paid to it as trustee of the bondholders. The Trust Company allowed the order to be entered and all the proceedings to be taken without objection and now seeks to appropriate the entire net proceeds.

[2, 3] For the services of the receiver in collecting the special fund he was allowed $4,500. This sum, in view of the general situation and the small amount recovered, we regard as sufficiently liberal. The general creditors could only share in the amount received from the foreign insurance in the event that the amount was in excess of the claims of the contributing creditors and then only in the surplus over that amount. The receiver could only receive commissions on that surplus. He cannot charge the general expense of administration upon a special fund which was procured by the efforts and at the expense of the contributing creditors. The fund thus created with the sanction of the court cannot be depleted in any manner and must go undiminished to the creditors whose contributions created it.

An order similar in all essential features to the one in controversy was upheld in McEwen v. Harriman Land Co., 138 Fed. 797, 808, 71 C. C. A. 163.

[4] Regarding the fund derived from the Domestic Companies, we think the court was correct in awarding it to the Industrial Trust Company, trustee under the mortgage, subject to the First National Bank's claim of compensation, but free of the claims of Hayward and Winslow. Winslow presents a claim for legal services rendered by him to the Nichols & Langworthy Machine Company prior to the receivership. Hayward was the purchaser of a note made by the Machine Company and delivered to the Carnegie Trust Company on which was due a balance of $6,430.19. Hayward got only the title of the Carnegie Company to the note and collateral. He paid no money, but gave his own note for the exact amount due on the Carnegie note, and did not become a purchaser for value. His claim is subordinate to that of the trustee under the mortgage.

In short, the payment of the insurance money by the foreign and domestic companies created two separate funds, the former for the benefit of those creditors whose contributions produced it, and the latter for the benefit of the bondholders for whose benefit, in the first instance, the insurance was effected. No other creditor or claimant has any interest in or lien upon these special funds until the primary obligations are discharged.

The Carnegie Company was fully informed of all the facts when the Sun policy was transferred to it and its assignee, Hayward, received no rights superior to those of the Carnegie Company, its assignor. He paid no money for the note and was not a bona fide purchaser for value.

The Machine Company covenanted with the Trust Company that it would keep its property fully insured to an amount at least equal to the amount of the outstanding bonds, and that all policies of insurance issued upon said property should be payable to the Trust Company.

It seems clear to us that neither Cornell, Hayward nor Winslow has a claim which can be enforced until after the amount due on the mortgage has been satisfied, which is superior to all other liens.

The other questions in controversy have been fully discussed in the opinions below, and we deem it unnecessary to add further to what is there said.

The decrees are affirmed.